UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| AUTO OWNERS INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:19-CV-115-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| TRIP CAT, LLC et al., | ) | **ORDER GRANTING MOTION TO** |
| | ) | **DISMISS** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Auto Owners Insurance Company ("Auto Owners") brought this declaratory judgment action to adjudicate its obligations under an insurance contract. [R. 1] Auto Owners' suit arises from an underlying action brought in Kentucky state court by Defendant Trip Cat, LLC ("Trip Cat") against Auto Owners' insured, Marshall Todd, following a construction dispute between Trip Cat and Todd. [*Id.*]

This matter is now before the Court on Trip Cat's Motion to Dismiss, which argues that the Court should decline to exercise its discretion over this declaratory judgment action. [R. 6] Defendant Todd filed a response in support of Trip Cat's Motion to Dismiss [R. 8]; Plaintiff filed a response in opposition [R. 9]; and Trip Cat did not file a reply. This matter is ripe for review. For the reasons stated below, the Court will **GRANT** the Motion to Dismiss.

I.  Background

In 2011, Trip Cat contracted with Todd, a general contractor, to renovate a building by stripping down the existing building to its foundation and erecting a new structure. [R. 1-3 ¶¶ 5–6] Todd allegedly agreed to inspect the foundation of the original building and inform Trip Cat if the foundation was unfit. [*Id.* at ¶¶ 7, 9] Todd proceeded to demolish the existing building and

- 1 -

construct a new building on the original foundation. [*Id.* at ¶¶ 10–11]  In 2017, Trip Cat discovered that the foundation was in "unfit condition" and that these issues would have been present when Todd inspected it. [*Id.* at ¶ 12]  As a result, on August 15, 2018 Trip Cat filed a lawsuit against Todd in Pulaski Circuit Court, alleging that Todd (1) breached the contract by building the new structure upon an unfit foundation, (2) fraudulently misrepresented the condition of the foundation, and (3) breached the warranties given to Trip Cat. [*Id.* at ¶¶ 14–31]

Auto Owners insures Todd under a policy of general liability insurance. [R. 1]  On May 3, 2019, Auto Owners filed a complaint in this Court seeking a judicial declaration that it has no duty to defend or indemnify Todd in the Pulaski Circuit Court action. [*Id.* at ¶ 8]  Plaintiff first argues that the events alleged by Trip Cat in its state court complaint do not consist of either "bodily injury," "property damage," or an "occurrence" as defined by the policy. [*Id.* at ¶ 15]  Therefore, no coverage would be afforded for the events set forth in the state court complaint. [*Id.*]  Plaintiff then argues that even if the events do fall under one of these definitions, the policy issued to Todd specifically excludes intentional torts from coverage. [*Id.* at ¶ 16]  Accordingly, Todd's alleged fraud, intentional misrepresentations, and false, misleading, and deceptive practices would be excluded from coverage under the policy. [*Id.*]

## II.     Discussion

While the Court has jurisdiction to hear this action, *see* [R. 17], under 28 U.S.C. § 2201 it must still decide whether jurisdiction is appropriate.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added).  The Act thus "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the

rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Generally, courts should only exercise this discretionary jurisdiction when doing so would advance the interests of justice or preserve resources of the parties. *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.,* 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008) (citing *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949)) (other citations omitted).

The Sixth Circuit's *Grand Trunk* factors guide district courts when deciding whether to exercise jurisdiction under Section 2201. These factors are:

1. Whether the declaratory action would settle the controversy;

2. Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

3. Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;

4. Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

5. Whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp*., 746 F.2d 323, 326 (6th Cir. 1984). The Sixth Circuit has noted that these factors are not given any particular weight and are meant to focus the district court on three things: efficiency, fairness, and federalism. *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (internal citations omitted). Therefore, "the essential question is always whether a district court has taken a good look at the issue and engaged in a reasonable analysis of whether issuing a declaration would be useful and fair." *Id*.

**A. Factors One and Two: Will the Action Settle the Controversy and Clarify the Legal Relations?**

The first two factors are closely related and therefore often considered together. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). The Sixth Circuit has

developed split lines of precedent concerning these two factors, each discussed in turn below. The Sixth Circuit explained that the incongruence between each line of cases results from the "different factual scenarios" presented. *Id.* at 555.

The first factor is whether the district court's judgment would settle the controversy. *Grand Trunk*, 746 F.2d at 326. One line of cases has held that this factor is met if the declaratory action can settle the insurance coverage controversy presented, even though it will not resolve the underlying state court action. *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("[W]hile the declaratory judgment would not end the dispute . . . it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend . . . ."). The reasoning is often that "a declaratory judgment is proper if it will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-CV-326-TBR, 2018 WL 1914731, at *4 (W.D. Ky. Apr. 23, 2018) (citation omitted), *aff'd* 936 F.3d 386 (6th Cir. 2019).

A second line of cases has held that although such declaratory actions might clarify the legal relationship between the parties, they ultimately fail factor one analysis by failing to settle the ultimate controversy between the parties which is ongoing in state court. *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) ("Granting the declaratory relief sought by Evanston and Travelers settles the scope of insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to . . . 'clarify the legal relationship' between the other parties."); *see also State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 251 (6th Cir. 1986) (Merritt, J., dissenting) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are

rarely helpful when there is an ongoing action in another court . . . Such actions seldom resolve the entire dispute among the parties, and they create confusion among courts as to schedules, orderly resolution of factual disputes, and *res judicata*."). These cases often involve factual disputes that are also at issue in the state court, or instances where the state court plaintiff has not been joined. *Cole's Place*, 2018 WL 1914731, at *4; *Encompass Indem. Co. v. Gray*, No. 3:17-CV-713-RGJ, 2020 WL 353236, at *4–*5 (W.D. Ky. Jan. 21, 2020).

The Sixth Circuit has provided similarly conflicting guidance on factor two, "whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) (internal citations omitted). In *Flowers*, the Sixth Circuit held that for a declaratory judgment to satisfy factor two, it must simply provide a final resolution of the discrete dispute presented and need not settle all the relations in state court. *Id.* On the other hand, the *Travelers* Court held that the second factor was not met when the judgment would not clarify the legal relations between the other parties to the state court action who may have been potentially affected by the judgment. *Travelers*, 495 F.3d at 272; *Bituminous Cas. Corp. v. J & L Lumber Co.,* 373 F.3d 807, 814 (6th Cir. 2004) ("[A]lthough a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts, the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action.").

The instant action bears similarities to both lines of cases. As in *Northland*, the party who brought this declaratory judgment action, Auto Owners, is not named in the underlying state court matter. [R. 1-3] Thus, the insurance coverage dispute is not directly at issue in the state court lawsuit before the Pulaski Circuit Court. [*Id.*] This means that there is "little or no risk that

a ruling on this precise issue would be duplicated or contradicted by the state court." *Auto-Owners Ins. Co. v. Egnew*, 152 F. Supp. 3d 868, 877 (E.D. Ky. 2016). However, consistent with the *Travelers/Bituminous* lines of precedent, the Court must also examine whether the insurance coverage dispute depends on "fact-based . . . question[s] of state law," and if so, whether those questions are likely to be addressed by the state court. *Bituminous*, 373 F.3d at 813. To answer this question, the Court must review the coverage dispute and policy provisions. *Egnew*, 152 F. Supp. 3d at 875.

The coverage dispute in this case boils down to whether the policy between Auto Owners and Marshall Todd imposes a duty to defend or indemnify Todd in the state court action. [R. 1 p. 11] This policy pledges to cover amounts that the insured "becomes legally obligated to pay as damages because of 'bodily injury[,]' ['personal injury,'] or 'property damage' to which this insurance applies." [*Id.* at pp. 5–6] However, coverage only applies if the "bodily injury," "personal injury," or "property damage," is caused by an "occurrence." [*Id.*] Here, Auto Owners argues that Todd's alleged conduct does not qualify as an "occurrence." [*Id.* at p. 11] The policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." [*Id.* at p. 9] However, the term "accident" is not defined.

Auto Owners posits that the Kentucky Supreme Court has previously addressed these issues in *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69 (Ky. 2010). [R. 9 pp. 12–13] The Court in *Cincinnati* addressed the issue of whether "a claim of defective construction against a homebuilder is, standing alone, a claim for property damage caused by an 'occurrence' under a commercial general liability (CGL) insurance policy." *Id.* at 71. In that case, homeowners sued their homebuilder for faulty construction, alleging that "their home was so poorly built that it was beyond repair and needed to be razed." *Id.* Like Todd's policy, the

homebuilder's policy defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 72. Because the term "accident" was left undefined, the Court relied on the doctrine of fortuity—which consists of the elements of intent and control—to interpret the policy. *Id.* at 74. For an event to be fortuitous (and therefore accidental), it must have been unintentional and a "chance event" beyond the control of the insured. *Id.* at 76. Because the homebuilder had control over the construction process (either directly or through its subcontractors), the allegedly substandard construction was not a fortuitous or accidental "occurrence" within the meaning of the policy. *Id.* Accordingly, the Court held that claims of faulty workmanship, standing alone, are not "occurrences" under CGL policies. *Id.* at 71, 73.

Despite Auto Owners' assertion to the contrary, the holding in *Cincinnati* is too narrow to settle this controversy as a matter of law. First, any claim against Todd for faulty workmanship does not "stand alone." *Id.* Rather, it is nestled within three separate claims for breach of contract, fraud, and breach of warranty. [R. 1-3 pp. 3–5] Second, although *Cincinnati* provides clarity on the "doctrine of fortuity" as it relates to an "occurrence," it does not establish whether alleged misrepresentations regarding a foundation's condition constitute an "occurrence" as a matter of law. *See Egnew*, 152 F. Supp. 3d at 875–76 ("[E]stablished Kentucky case law is too narrow to settle the controversy presented in this case—whether alleged underhanded business negotiations and transactions constitute an 'occurrence'—as a matter of law."). As a result, whether Todd's alleged conduct is an "occurrence" is a fact-based question of state law, and one which the Pulaski Circuit Court will certainly be considering. *Id.*; *Bituminous*, 373 F.3d at 813; *see also Arrowood Indem. Co. v. Drees Co.*, No. 14-169-DLB-CJS, 2015 WL 136107, at *5 (E.D. Ky. Jan. 9, 2015) ("[T]his determination will inevitably raise fact-based questions of state

law, namely, whether or not the events giving rise to the alleged damages came about fortuitously.").

Todd's policy also contains exclusions to coverage, including an intentional acts exclusion. [R. 1 p. 11] Count Two of the state court complaint accuses Todd of committing the intentional tort of fraud. [R. 1-3 p. 3] Auto Owners thus argues that even if Todd's conduct constitutes an "occurrence," coverage is barred by this exclusion. [R. 1 pp. 11–12] However, this would require the Court to consider whether Todd acted intentionally—a factual finding that the Pulaski Circuit Court must itself consider in determining whether Todd is liable for this tort. In other words, a declaration that there is no coverage based on the intentional acts exclusion would require the same factual intent inquiry as the state court, and this Court's factual findings could contradict the state court's ultimate finding. Thus, allowing this case to proceed would "require the district court to inquire into matters being developed through state court discovery," thereby risking inconsistent findings. *Encompass Indem. Co. v. Gray*, No. 3:17-CV-713-RGJ, 2020 WL 353236, at *7 (W.D. Ky. Jan. 21, 2020) (quoting *Flowers*, 513 F.3d at 556). In such scenarios, where the coverage question involves factual determinations that echo the state court claims, district courts have found that the first two *Grand Trunk* factors weigh against exercising jurisdiction. *See, e.g.*, *Am. Nat'l Prop. & Cas. Co. v. Wilson*, No. 18-116-DLB-CJS, 2019 WL 1876797, at *4–*5 (E.D. Ky. Apr. 26, 2019); *Gray*, 2020 WL 353236, at *7. These courts' thoughtful discussions persuade the Court to find that factors one and two, considered together, weigh against exercising jurisdiction.

In sum, to provide the declaratory relief that Auto Owners requests, the Court would have to determine if Todd's actions constitute an "occurrence" or an "intentional act" under the policy, which inevitably requires fact-finding on the issues of fortuity and intentionality. The

Pulaski Circuit Court will certainly address the same factual questions. Declaratory relief would thus not resolve all issues between the parties as they will still need to litigate the underlying factual issues implicated by Trip Cat's state court claims at the risk of conflicting findings. A decision in this action would only clarify one legal relationship among the parties—whether the policy at issue provides coverage based on an interpretation of "occurrence" and "intentional acts." While this Court might be able to provide a resolution to the discrete issue of coverage, the legal relationships among the parties would still require further adjudication in the state court to be truly settled. For these reasons, the Court finds that the first and second factors weigh against exercising jurisdiction.

> B. **Factor Three: Is this a Race for Res Judicata?**

The third factor is whether the declaratory remedy is being used for the purposes of "procedural fencing" or "to provide an arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326 (internal citations omitted). "The question is . . . whether the declaratory plaintiff has filed in an attempt to get [its] choice of forum by filing first." *AmSouth Bank v. Dale*, 386 F.3d 763, 789 (6th Cir. 2004). The Sixth Circuit has advised that courts should be "reluctant to impute an improper motive to a [declaratory judgment] plaintiff where there is no evidence of such in the record;" however this factor can "preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers*, 513 F.3d at 558 (internal citations and quotation marks omitted). Relatedly, the Sixth Circuit has given a declaratory judgment plaintiff the benefit of the doubt that no improper motive fueled the filing of its action where it was filed *after* the state court litigation has begun. *Bituminous,* 373 F.3d at 814.

Here, the state court action was filed on August 15, 2018 [R. 1-3] and the declaratory judgment action was filed on May 3, 2019. [R. 1]  Thus, the Court gives Auto Owners the benefit of the doubt that no improper motive fueled the filing of its action. *Bituminous*, 373 F.3d at 814. Furthermore, there is no evidence in the record that the insurer had any improper motive or engaged in any unfair tactics. *See Flowers*, 513 F.3d at 558.  Accordingly, this factor weighs slightly in favor of exercising jurisdiction.

> **C.  Factor Four: Will this Action Increase Friction Between State and Federal Courts?**

The fourth factor assesses the degree to which the declaratory judgment would increase friction between the federal and state courts. *Grand Trunk*, 746 F.2d at 326.  The Supreme Court has admonished that a "district court might be indulging in '[g]ratuitous interference' if it permit[s] the federal declaratory action to proceed" simultaneously with a state court action involving the same parties and state law issues. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 283 (1995) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).  The Sixth Circuit has identified three additional sub-factors to consider for factor four:

> 1. Whether the underlying factual issues are important to an informed resolution of the case;
>
> 2. Whether the state trial court is in a better position to evaluate those factual issues than is the federal court;
>
> 3. Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action.

*Flowers,* 513 F.3d at 560.

### 1. Sub-Factor One: Are the Underlying Factual Issues Important to an Informed Resolution of the Case?

Sub-factor one "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. District courts have declined to exercise jurisdiction when the state and federal cases involved the same factual issues. *Encompass Indem. Co. v. Gray*, No. 3:17-CV-713-RGJ, 2020 WL 353236, at *7 (W.D. Ky. Jan. 21, 2020); *Am. Nat'l Prop. & Cas. Co. v. Wilson*, No. 18-116-DLB-CJS, 2019 WL 1876797, at *7 (E.D. Ky. Apr. 26, 2019). As discussed above, determination of the coverage issue in this case exposes the Court to a possibility of conflicting factual findings with the Kentucky trial court, and therefore weighs against exercising jurisdiction. *See Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 440 (6th Cir. 2018) (citation omitted) ("Thus, it appears that this case is dependent on factual findings by the state court, which weighs against exercising jurisdiction."). Because factual findings by the Kentucky court could be in conflict and duplicative with those in this Court, this subfactor counsels against exercising jurisdiction. *Id.*

### 2. Sub-Factor Two: Is the State Court in a Better Position to Evaluate Those Factual Issues?

The second sub-factor examines "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Generally, "Kentucky courts are in the better position to apply and interpret its law on these issues." *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007). Courts may also consider whether state court decisions have addressed the issue in question. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968–69 (6th Cir. 2000). Such an inquiry is appropriate because ruling on an unresolved question of state law may "increase the friction between our federal and state

courts." *Id.* at 968. That said, "when an insurance company is not a party to the state action, and neither the scope of insurance coverage nor the obligation to defend is before the state court, a decision by the district court on these issues would not offend principles of comity." *Flowers*, 513 F.3d at 560 (quoting *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)) (internal quotations and alterations omitted). Furthermore, this sub-factor can be satisfied if the court is presented with a pure question of law that does not require any factual determinations. *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-CV-326-TBR, 2018 WL 1914731, at *4 (W.D. Ky. Apr. 23, 2018) (citation omitted). Such is not the case here.

Although Auto Owners is not named as a party in the state court action, and insurance coverage is not an issue in that action, Sixth Circuit precedent is clear that Kentucky courts are better situated than this Court to adjudicate matters that revolve around state regulated insurance contracts. *See Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 815–16. This Court finds that the state court would be in a better position to answer the question of coverage, especially given the overlapping factual issues presented in the state court action. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 401 (6th Cir. 2019) (noting that, unlike this case, "no unresolved factual issues relevant to the coverage question [were] pending in the state-court action"). This action involves an interpretation of a Kentucky insurance contract, an area of law largely reserved to state courts for resolution and one which implicates important state policies. *Cole's Place*, 2018 WL 1914731, at *8; *Gray*, 2020 WL 353236, at *8. Although the mere existence of a state court proceeding is not determinative, it heavily influences the analysis. *Wilson*, 2019 WL 1876797, at *6. Given the nature of Todd's alleged conduct and the questions of state law presented, the Court believes that a Kentucky state court is better situated to resolve those issues. This sub-factor thus counsels against exercising jurisdiction.

### 3. Sub-Factor Three: Is There a Close Nexus Between the Underlying Factual and Legal Issues?

The third sub-factor focuses on whether the factual and legal issues implicate important state policies. *Flowers,* 513 F.3d at 560. The Sixth Circuit has recognized in several cases that states are in a better position to resolve insurance disputes because they are more familiar with state law, they regulate insurance companies for the benefit of their citizens, and they are best situated to identify and enforce the policies underlying those regulations. *Id.* at 561 (citing *Bituminous*, 373 F.3d at 815); *see also Travelers*, 495 F.3d at 273. The Court agrees that the development of case law concerning insurance disputes in Kentucky is better left to its state courts. The Court is particularly persuaded by the Kentucky courts' consistent consideration of policy rationales to support their interpretations of insurance policies. *See, e.g.*, *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74–78 (Ky. 2010) (discussing the expectations of the insured and the goal of discouraging negligent conduct); *Bituminous Cas. Co. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638–40 (Ky. 2007) (discussing the overall purpose of CGL insurance policies). The claims presented in the state court action are entirely under state law, and the Court is hesitant to make a piecemeal determination regarding this litigation. Accordingly, this sub-factor also counsels against exercising jurisdiction.

The Court finds that the fourth factor, after considering each of the sub-factors, weighs against the exercise of jurisdiction.

### D. Factor Five: Is There an Available Alternative Remedy?

The final factor is whether a better or more effective remedy is available to the declaratory action plaintiff. *Grand Trunk*, 746 F.2d at 326. "[I]f an alternative remedy is better or more effective," this Court should decline to exercise jurisdiction. *Id.* Here, Trip Cat points out that "this action could have been brought in the underlying state claim where the state court

has already been apprised of the underlying facts." [R. 6 p. 5]  Auto Owners acknowledges it has the alternative options of "filing a declaratory action [pursuant to Ky. Rev. Stat. § 418.040] or an indemnity action in the Kentucky state court." [R. 9 p. 14]

Although the parties are correct that these alternative remedies exist, "it is not clear whether such alternative remedies are *better or more effective* than a federal declaratory action." *Flowers*, 513 F.3d at 562.  The Sixth Circuit has held that "our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.*

In terms of the option to file a declaratory judgment action in Kentucky courts, the Sixth Circuit has held that, "[i]n many ways, this alternative would have been better." *Flowers*, 513 F.3d at 562.  Specifically, "[t]he Kentucky courts are in a superior position to resolve undecided questions of state law," and "Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge." *Id.*  On the other hand, if "Kentucky precedent provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court [is] a clearly inferior forum to resolve the issue" in this case." *Id.*

Here, Plaintiff could file a declaratory judgment action in state court and petition that court to combine the two actions, which the Court finds would be a better alternative.  Further, as discussed above, although *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.* provides clarity on the "doctrine of fortuity" as it relates to defining an "occurrence" in a CGL policy, it does not squarely address the issue of alleged misrepresentations regarding the condition of a structure's foundation.  Because *Cincinnati* is too narrow to settle the legal issue presented here, the Kentucky courts are in a superior position to resolve this matter.

By contrast, the option of filing an indemnity action "would not have been a superior alternative." *Flowers*, 513 F.3d at 562. This is because Auto Owners "would have been required to join the underlying state action" and then "would have had to wait until the liability issue in the case was resolved before determining its obligations toward [Todd]. Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.*

When faced with the same conflicting alternative remedies in *Flowers*, the Sixth Circuit held that this factor "counsel[s] against exercising jurisdiction." *Id.* at 562. For the reasons stated above, this Court agrees that the fifth *Grand Trunk* factor, on balance, weighs against exercising jurisdiction.

### E. Balancing the *Grand Trunk* Factors

Although the Sixth Circuit has not yet indicated the particular manner in which district courts should evaluate the *Grand Trunk* factors, *Flowers*, 513 F.3d at 563, the Court is satisfied that, on balance, it is proper for the Court to decline its jurisdiction over Auto Owners' declaratory judgment action. All but the third *Grand Trunk* factor counsel against exercising jurisdiction. Therefore, keeping in mind the "underlying considerations of efficiency, fairness, and federalism," *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014), the Court declines to exercise jurisdiction in this matter.

## III. Conclusion

**IT IS HEREBY ORDERED** as follows:

1. Defendant Trip Cat's Motion to Dismiss [**R. 6**] is **GRANTED**.

2. The Court declines to exercise its jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED** and **STRICKEN**.

3. The Court will enter a separate Judgment.

This the 17th day of March, 2020.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY